IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BOBBY JOE MESSER, SR.,
    Petitioner,

vs.                                                Case No.: 3:07cv177/MCR/EMT

WALTER A. McNEIL[1],
    Respondent.
_____/

## REPORT AND RECOMMENDATION

    This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1). Respondent filed an answer and relevant portions of the state court record (Doc. 10). Petitioner filed a reply (Doc. 15).

    The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of the submissions of the parties and the state court record, it is the opinion of the undersigned that Petitioner has failed to establish a colorable claim for relief; therefore, an evidentiary hearing is not required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).[2] It is further

---

[1] Walter A. McNeil succeeded James McDonough as Secretary for the Department of Corrections, and is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d)(1).

[2] Petitioner argues that he is entitled to an evidentiary hearing because (1) he requested an evidentiary hearing at every level of the state court proceedings and was not granted one, (2) this court may not make credibility determinations without conducting an evidentiary hearing, and (3) any controverted "facts" found by the state court while denying a request of an evidentiary hearing are not entitled to a presumption of correctness (*see* Doc. 15 at 3–4). Petitioner ignores the fact that his uncontroverted factual allegations already have been taken as true throughout both his state post-conviction proceedings and this federal proceeding, and the state courts and this court have determined that the facts, as contained in his state and federal filings, do not merit relief. Indeed, Petitioner has received the benefit of having all of the facts alleged in his submissions accepted as true without ever having those facts subject to cross-examination by, or additional rebuttal evidence from, the State. There is no need for an evidentiary hearing in this case to resolve the historical facts concerning Petitioner's claims because (1) there are no historical facts in dispute and

the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.  BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are undisputed by the parties and established by the state court record. Following a jury trial in the Circuit Court for Escambia County, Florida, Petitioner was found guilty of attempted robbery with a firearm while wearing a mask (Doc. 10, Ex. A at 17–18). On October 8, 2004, Petitioner was sentenced to fifteen (15) years of imprisonment, with a mandatory minimum term of ten (10) years and credit for pre-sentence jail time of 327 days, to be followed by a five-year term of probation (*id.* at 67–71). Petitioner appealed the judgment of conviction and sentence to the Florida First District Court of Appeal (First DCA).

Petitioner's appellate counsel filed a brief asserting that counsel was unable to make a good faith argument that reversible error occurred in the trial court, in accordance with Anders v. California, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967) (Doc. 10, Ex. E). Petitioner did not file a pro se brief (*see* Doc. 10, Ex. D). On September 6, 2005, the First DCA affirmed the judgment of conviction and sentence per curiam without written opinion, with the mandate issuing October 5, 2005 (Doc. 10, Ex. F). Messer v. State, 911 So. 2d 104 (Fla. 1st DCA Sept. 6, 2005) (Table). Petitioner did not seek certiorari review by the Florida Supreme Court or the United States Supreme Court.

On or about January 17, 2006, Petitioner filed a motion for postconviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 10, Ex. H at 1–14). The trial court denied the motion without an evidentiary hearing in a written opinion rendered on February 21, 2006 (*id.* at 15–42). Petitioner appealed the decision to the First DCA, and the appellate court affirmed per curiam without written opinion on July 14, 2006, with the mandate issuing August 9, 2006 (Doc. 10, Ex. I). Messer v. State, 934 So. 2d 453 (Fla. 1st DCA July 14, 2006) (Table).

Petitioner filed the instant habeas action on April 13, 2007 (*see* Doc. 1 at 6). Respondent concedes that the petition is timely (Doc. 10 at 4).

---

(2) Petitioner, in fact, has presented, in his state and federal post-conviction proceedings, the evidence he contends supports his claims. *See* Turner v. Crosby, 339 F.3d 1247, 1274–75 (11th Cir. 2003) (citation omitted).

Case No. 3:07cv177/MCR/EMT

II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to"

---

[3] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Case 3:07-cv-00177-MCR-EMT   Document 16   Filed 03/03/08   Page 4 of 15

Page 4 of 15

> clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the

governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and

concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, --- U.S. --- 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.   PETITIONER'S CLAIMS

> A.   Ground I: Ineffective assistance of counsel — failed to call Defendant to testify and misadvised that prior convictions would automatically be brought to jury's attention.

(Doc. 1 at 4). Petitioner asserts that his counsel instructed him that if he took the stand, his prior convictions would automatically be brought to the jury's attention (*id.*). Petitioner asserts that counsel offered no further explanation regarding the use of Petitioner's prior convictions as impeachment (*id.*).

Respondent concedes that Petitioner exhausted this claim in the state courts (Doc. 10 at 5).

>   1.   Clearly Established Supreme Court Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To obtain relief under Strickland, a petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 687–88. It is the petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable and that he suffered prejudice as a result thereof. *Id.* at 687. If a petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

> In determining whether counsel's performance was reasonable, the Court instructed:
>
> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or

    adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Cf*. Engle v. Isaac, 456 U.S. 107, 133–134, 102 S. Ct. 1558, 1574-1575, 71 L. Ed. 2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *See* Michel v. Louisiana, *supra*, 350 U.S. at 101, 76 S. Ct. at 164.

Strickland, 466 U.S. at 689.

    A criminal defendant has "a fundamental constitutional" right to testify in his behalf at trial. Rock v. Arkansas, 483 U.S. 44, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987). This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel. *Id.*, 483 U.S. at 52. Competent legal representation requires that counsel advise the criminal defendant of his right to testify or not to testify, the strategic implications of each choice, and that the final decision of whether to testify is the defendant's alone; additionally, counsel must honor his client's decision. *See* United States v. Teague, 953 F.2D 1525, 1533 (11th Cir. 1992); Gallego v. United States, 174 F.3d 1196, 1197 (11th Cir. 1999) (citing Teague). Although it is the defendant's right ultimately to decide whether to testify, counsel has the duty to advise the defendant "in the strongest possible terms" not to testify if counsel believes that is the wiser course. Teague, 953 F.3d at 1533.

> The first prong of [the Strickland] test requires that defendant show that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. at 2065. Where the defendant claims a violation of his right to testify by defense counsel, the essence of the claim is that the action or inaction of the attorney deprived the defendant of the ability to choose whether or not to testify in his own behalf. In other words, by not protecting the defendant's right to testify, defense counsel's performance fell below the constitutional minimum, thereby violating the first prong of the Strickland test. For example, if defense counsel refused to accept the defendant's decision to testify and would not call him to the stand, counsel would have acted unethically to prevent the defendant from exercising his fundamental constitutional right to testify. Alternatively, if defense counsel never informed the defendant of the right to testify, and that the ultimate decision belongs to the defendant, counsel would have neglected the vital professional responsibility of ensuring that the defendant's right to testify is protected and that

>any waiver of that right is knowing and voluntary. Under such circumstances, defense counsel has not acted "'within the range of competence demanded of attorneys in criminal cases,'" and the defendant clearly has not received reasonably effective assistance of counsel. *See* Strickland, 466 U.S. at 687, 104 S.Ct. at 2064 (quoting McMann v. Richardson, 397 U.S. 759, 770-71, 90 S. Ct. 1441, 1448–49, 25 L. Ed. 2d 763 (1970)).

Teague, 953 F.2d at 1534.

Although an attorney may be ineffective for preventing the accused from testifying, Petitioner must also show that he was prejudiced as a result. Nichols v. Butler, 953 F.2d 1550, 1553 (11th Cir. 1992). As in all claims of ineffective assistance of counsel, Petitioner maintains the burden of establishing his contentions and, thus, he must produce something more than a bare, unsubstantiated, self-serving allegation that his counsel prevented him from taking the stand. Underwood v. Clark, 939 F.2d 473, 476 (7th Cir. 1991). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" Strickland, 466 U.S. at 693. However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given,

> and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors. . . . [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.

*Id.* at 695–96.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698, 104 S. Ct. at 2070; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

### 2. Federal Review of State Court Decision

Petitioner raised this claim as his first ground for relief in his Rule 3.850 motion (*see* Doc. 10, Ex. H at 3–10). In the written opinion denying Petitioner's claim, the post-conviction court found as fact that Petitioner admitted in his pleadings that his counsel advised him that he had the right to testify, and Petitioner asserted that defense counsel further advised him that if he took the witness stand, his prior convictions would "come up" (Doc. 10, Ex. H at 16). The state court found that Petitioner also asserted that he inferred counsel's advice to mean that the exact nature of his offenses would be presented to the jury (*id.*). The court further found that Petitioner did not assert that he inquired any further of counsel regarding this issue, only that counsel failed to say anything more, thus allowing Petitioner's misunderstanding to go uncorrected (*id.*). The court concluded that defense counsel could not be held responsible for Petitioner's misunderstanding, in light of the absence of any allegation or showing that Petitioner indicated his lack of understanding to counsel (*id.*). The state court further concluded that defense counsel correctly stated the law with regard to the State's ability to raise the issue of Petitioner's prior convictions if he testified (*id.*). The state court's written opinion identified the Strickland standard as applicable to claims of ineffective assistance of counsel (*id.* at 15). Based upon its application of Strickland to its factual findings and legal conclusions, the state court denied Petitioner's claim.

Because the state court correctly identified Strickland as the governing precedent, Petitioner is entitled to federal habeas relief only if he demonstrates that the state court decision was based

upon an unreasonable determination of the facts or that the state court decision was an unreasonable application of Strickland.

Petitioner has not proffered any evidence to rebut the state court's factual findings, and a review of the state court record confirms that they are correct. Petitioner admitted in his Rule 3.850 motion that his counsel informed him that he had the right to testify (Doc. 10, Ex. H at 3). Petitioner further stated that his counsel advised him that if he took the witness stand, his prior convictions would "come up" (*id*. at 3–4). Petitioner stated that counsel did not further explain the use of prior convictions as impeachment (*id*. at 4), and Petitioner understood counsel's advice to mean that the nature of his prior convictions would "automatically be laid out" for the jury to hear (*id*.). Petitioner stated that he based his decision not to testify on counsel's advice, and if he had not misunderstood this advice, he would have testified (*id*.). Petitioner did not allege that he indicated his misunderstanding to counsel or that counsel failed to honor his decision with regard to testifying (*see id.*).

The trial transcript additionally confirms that Petitioner was informed that he had an absolute right to testify or not to testify, the decision was his, alone, to make, and no one could force him to decide either to testify or not to testify (Doc. 10, Ex. C at 386–87). The following exchange took place between Petitioner and the trial judge:

> THE COURT: Mr. Messer, anyone who is on trial has the absolute right not to testify. Anyone on trial has the absolute right to testify if he or she wishes to do so. The decision is their's alone to make. No one can force them to make a decision to either testify or not testify. Do you understand that?
>
> THE DEFENDANT: Yes, sir, I do.
>
> THE COURT: Okay. If one chooses not to testify, that certainly is the right one has under the Constitution, and I will instruct the jury pursuant to the jury instructions that I provided to you and your lawyer earlier that they cannot draw any inference of guilt from the fact that you have not testified, and they can't discuss it in the jury room during their deliberations. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: If you do choose to take the stand to testify, then you have the right to have your testimony considered by the same standards as any other witness.

>In other words, the jury can choose to believe it or disbelieve it.  You can be cross-examined on the stand by the State.  Do you understand that?
>
>THE DEFENDANT:  Yes, sir, I do.
>
>THE COURT: Have you had an adequate opportunity to discuss the issue of whether or not you would testify with your lawyer?
>
>THE DEFENDANT:  Yes, sir, I have.
>
>THE COURT: Okay.  Is this your decision?
>
>THE DEFENDANT:  Yes, sir, it is.
>
>THE COURT: Okay.  Has anyone forced you to make the decision not to testify?
>
>THE DEFENDANT:  No, sir.
>
>THE COURT: Has anyone promised you anything to get you to make the decision not to testify?
>
>THE DEFENDANT:  No, sir, they have not.
>
>THE COURT: Thank you, Mr. Messer. . . . I find your decision not to testify in this matter is free, voluntarily [sic] and knowing.
>
>THE DEFENDANT:  Thank you, Judge.

(Doc. 10, Ex. C at 386–88).  Based upon the record, and Petitioner's failure to proffer any evidence to rebut the state court's factual findings, the undersigned concludes that the state court's factual determinations were not unreasonable and, therefore, are presumed correct.

Additionally, this court must defer to the state court's determination that defense counsel correctly advised Petitioner that the State would raise the issue of Petitioner's prior convictions if he testified.  Under Florida law, when a defendant testifies on his own behalf, the State may inquire as to whether he has been convicted of a crime punishable by prison in excess of one year or a crime, including a misdemeanor, involving dishonesty or a false statement.  Fla. Stat. §§ 90.608, 90.610 (2003); Mead v. State, 86 So. 2d 773 (Fla. 1956); Jackson v. State, 570 So. 2d 1388, 1390 (Fla. 1st DCA 1990).  "[S]tate courts are the ultimate expositors of state law," and federal courts must

therefore abide by their rulings on matters of state law. Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 1886, 44 L. Ed. 2d 508 (1975) (citations and footnote omitted); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983).

In light of the fact that Petitioner was advised he had the absolute right to testify or not to testify and that the decision of whether to testify was his alone to make, as well as the state court's conclusion that defense counsel correctly advised Petitioner that the State would raise the issue of his prior convictions if he testified, Petitioner has failed to show that counsel deprived him of the ability to knowingly decide whether or not to testify, or that counsel otherwise interfered with his right to testify. Therefore, the state court decision denying Petitioner's claim was not an unreasonable application of Strickland.

> B. Ground II: Ineffective assistance of counsel — failed to object or suggest alternative to jury's request for transcript of expert testimony after trial court's denial.

(Doc. 1 at 4). Petitioner next claims that his counsel provided ineffective assistance with regard to the trial court's response to a request by the jury to see a transcript of a DNA expert's trial testimony (*id.*). Petitioner states that the jury's request to see the transcript indicated that they had doubt as to how Petitioner's DNA adhered to a ski mask (the victim of the attempted robbery described the perpetrator as wearing a black ski mask, and a black ski mask was found in a vehicle owned by Petitioner, which was the same vehicle identified by the victim as driven by the robber (*see* Doc. 10, Ex. C at 108–13, 141–43, 231–36, 258–59, 261)) (*id.*). Petitioner claims that defense counsel should have objected to the trial court's response to the jury's request, or counsel should have suggested that the testimony be "read back" (*id.*).

Respondent concedes that Petitioner exhausted this claim in the state courts (Doc. 10 at 5).

1. Clearly Established Supreme Court Law

The two-part Strickland standard which governs claims of ineffective assistance of counsel was set forth *supra*.

2. Federal Review of State Court Decision

Petitioner raised this claim as his second ground for relief in his Rule 3.850 motion (*see* Doc. 25, Ex. H at 3, 11–12). The state court denied Petitioner's claim on the ground that he failed to allege "any 'positive, specific, and factual' prejudice" because he did not cite any aspect of the DNA expert's testimony that placed Petitioner's conviction into question (*id*. at 16) (quoting Richardson v. State, 677 So. 2d 43, 44 (Fla. 1st DCA 1996)) (citing portion of trial transcript including DNA expert's testimony).

The trial record shows that after 9:00 p.m. on the first evening of jury deliberations, the jury sent the following message to the judge: "The jury would like the transcript of the testimony of Jennifer Hatler,[4] FDLE DNA expert" (Doc. 10, Ex. A at 16; Ex. C at 494–95, 498). The trial judge informed counsel of the jury's request and asked for their responses (Doc. 10, Ex. C at 495). Defense counsel responded that if it was practically feasible, he had no objection to the jury receiving a transcript of the direct and cross examinations of the expert (*id*.). The court commented that the court reporter who recorded the testimony was not present, and her recording was not available (*id*.). The judge further noted that in an extraordinary situation where it was absolutely necessary to review the testimony, another court reporter could obtain the recording or a "scopist" could be called to transcribe it, but such action was not practical in the present situation (*id*. at 495–96). The judge informed counsel that he would inform the jury that a transcript was not readily available; therefore, they would have to rely upon their collective recollection of the evidence (*id*. at 496). Counsel deferred to the judge's decision (*id*. at 497). The jury was called to the courtroom, and the trial judge informed them that from a practical standpoint, he was unable to provide the transcript, and they should rely on their collective recollection of the expert's testimony (*id*. at 497–98).

Petitioner has failed to establish a reasonable probability that, absent counsel's failure to object to the trial court's response to the jury or suggest a "read back" of Ms. Haveard's testimony, the jury would have had a reasonable doubt respecting guilt. Ms. Haveard testified that she received three exhibits relating to the ski mask from the Pensacola Police Department: Exhibit 22, which was debris from the exterior of the ski mask, Exhibit 23, which was debris from the interior of the mask,

---

[4]The proper spelling of the DNA expert's name is Jennifer Haveard (*see* Doc. 10, Ex. C at 339).

Case No. 3:07cv177/MCR/EMT

and Exhibit 25, which was a buccal swab from Petitioner (Doc. 10, Ex. C at 342). She testified that she prepared reports of her findings, which were submitted as trial exhibits and were available to the jury during deliberations (*see id.* at 343–44, 496). Ms. Haveard testified that she examined the debris under a microscope to determine if hairs found in the debris had root material that was suitable for DNA testing (*id.* at 345). She testified that she identified two hairs from the exterior of the mask that were suitable for DNA testing and obtained a partial DNA profile consistent with Petitioner's profile, and the partial profile was common to 1 in 480 in the Caucasian male population (*id.*). She testified that there were no hairs suitable for DNA testing on the debris from the interior of the mask (*id.* at 346). Ms. Haveard further testified that she swabbed the areas around the holes on the ski mask, both inside and outside the holes, for DNA evidence, and she was looking for cells that would have DNA in them, such as cells from sweat, saliva, or hair (*id.* at 346–47). She testified that on one side of the mask she discovered a "major contributor" of cells and a "minor contributor," and the profile of the major contributor was consistent with Petitioner's DNA profile and common to 1 in 300 quadrillion Caucasian males in the population (*id.* at 347–48). Ms. Haveard testified that on the other side of the mask she discovered the presence of DNA (*id.* at 348). She testified that testing indicated three possible contributors to the DNA, and Petitioner was one of the possible contributors (*id*). Ms. Haveard testified that Mark Allen McKee and Matthew Allen McKee were excluded as contributors (*id.* at 348–50).

On cross-examination, Ms. Haveard stated that it was possible for a person to put the mask over his face and not leave measurable DNA if he wore the mask "in the cool of the night," but she would expect to find some indication of DNA (*id.* at 352–53). She also testified that she believed she could still get a DNA profile even if the mask was left inside a vehicle for two weeks in the heat (*id.* at 353–54).

Petitioner asserts that the jury's request for a transcript of Ms. Haveard's testimony indicated that they had doubt as to how Petitioner's DNA adhered to the ski mask, but the jury's review of Ms. Haveard's testimony would not answered that question because she did not testify as to <u>how</u> DNA adhered to the mask, she only testified that she discovered DNA on the mask, that cells containing DNA could be deposited through various means, and that some of the DNA found on the mask was consistent with Petitioner's. Furthermore, even if the jury reviewed Ms. Haveard's testimony, there

is no reasonable probability that such review would have created reasonable doubt as to Petitioner's guilt, since her testimony had no exculpatory or impeachment value to the defense and only incriminated Petitioner by evidencing the presence of his DNA on the black ski mask found in his vehicle, the same vehicle identified by the victim as driven by the man who, while wearing a black ski mask, attempted to rob the store where he worked.  Therefore, the state court's conclusion that Petitioner failed to satisfy the prejudice prong of the Strickland standard was not unreasonable.

Accordingly, it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this 3rd day of March 2008.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**